# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

|  |  |
|---|---|
| CARRIE BRANNEN, both individually and on behalf of the Plan (First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(K) Provisions), | |
| Plaintiff, | |
| v. | Case No. _____ |
| FIRST CITIZENS BANKSHARES INC. EMPLOYEE STOCK OWNERSHIP PLAN WITH 401(K) PROVISIONS; S BANKSHARES, INC. (f.k.a. First Citizens Bankshares, Inc.); DANA A. POTTS as Plan Administrator of First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(K) Provisions and as a Member of the Board of Directors; Board of Directors Members JEANIE K. ANDERSON, ELSIE R. CHISHOLM, M.L. COFFER, B. DANIEL DUBBERLY, JR., MICHAEL J. KISTLER, JULIAN (BUTCH) C. LANE, JR., DON C. MARTIN, WILLIAM M. MILLER, RICHARD G. MOPPER, PATRICK T. O'CONNOR; MARK V. SMITH, RON STEPHENS, & JEFFREY R. TUCKER; Investment Committee Members JOHN DOES 1-20; Plan Trustee THE TRUST COMPANY OF STERNE, AGEE & LEACH, INC., | |
| Defendants. | |

529593.1

# **COMPLAINT**

COMES NOW Plaintiff CARRIE BRANNEN ("Ms. Brannen" or "Plaintiff"), individually and on behalf of the Plan (the "Participants"), and hereby files her Complaint against Defendants FIRST CITIZENS BANKSHARES INC. EMPLOYEE STOCK OWNERSHIP PLAN WITH 401(K) PROVISIONS (the "ESOP Plan" or the "Plan"); S BANKSHARES (f.k.a. First Citizens Bankshares, Inc.); DANA A. POTTS as Plan Administrator of First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(K) Provisions and as a Member of the Board of Directors; Board of Directors Members JEANIE K. ANDERSON, ELSIE R. CHISHOLM, M.L. COFFER, B. DANIEL DUBBERLY, JR., MICHAEL J. KISTLER, JULIAN (BUTCH) C. LANE, JR., DON C. MARTIN, WILLIAM M. MILLER, RICHARD G. MOPPER, PATRICK T. O'CONNOR; MARK V. SMITH, RON STEPHENS, & JEFFREY R. TUCKER; Investment Committee Members JOHN DOES 1-20; Plan Trustee THE TRUST COMPANY OF STERNE, AGEE & LEACH, INC., (collectively "Defendants"), respectfully showing to the Court as follows:

Plaintiff brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to ERISA § 502, codified at 29 U.S.C. § 1132, regarding an ESOP Plan sponsored by her former employer, First Citizens Bankshares (now known as S Bankshares). Plaintiff brings this action both

individually seeking benefits and document penalties under ERISA § 502(a)(1)(B) and (c), and on behalf of the Plan seeking losses for which Plan fiduciaries are personally liable pursuant to ERISA §§ 409 and 502(a)(2), and other equitable relief under ERISA § 502(a)(3)[1], including without limitation injunctive relief as available under applicable law, constructive trust, restitution, surcharge and other relief.  Plaintiff further seeks to recover her attorneys' fees and costs of bringing this action.

## **PARTIES**

### 1.

Plaintiff Carrie Brannen is a resident of Glenville, Tatnall County, Georgia. Plaintiff was an employee of First Citizens Bankshares for 35 years, and was at all relevant times a participant in the ESOP Plan.

### 2.

First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(K) Provisions (the "ESOP Plan" or the "Plan") is an employee pension benefit plan governed by ERISA sponsored by Ms. Brannen's former employer, First Citizens Bankshares (now known as S Bankshares).  The Plan is a juridical entity that can sue and be sued; it may be served with process through its Administrator, Dana A.

---

[1]   The claim for other equitable relief under ERISA § 502(a)(3) is based on separate facts than the claim for benefits under ERISA § 502(a)(1)(B).

Potts, at 205 South Veterans Boulevard, Glennville, Tattnall County, Georgia, 30427.

3.

S Bankshares, Inc. is a bank holding company governed by the laws of the State of Georgia; it was formerly known as First Citizens Bankshares Inc. and is the Primary Sponsor of the ESOP Plan and a Named Fiduciary.  It is referred to hereinafter as the "Bank."  S Bankshares, Inc. is located in Glennville, Tattnall County, Georgia, and may be served with process through its Registered Agent, Dana A. Potts, at 205 South Veterans Boulevard, Glennville, Tattnall County, Georgia 30427.

4.

Upon information and belief, as listed in the Form 5500s filed with the Internal Revenue Service and Department of Labor, Dana A. Potts is the named Plan Administrator for the Plan, and has maintained that position at all times relevant to this lawsuit.  Dana Potts is being sued in her official capacity as the Plan Administrator of the ESOP Plan, and as a member of the Board of Directors of First Citizens Bankshares Inc (hereinafter, the "Board of Directors").  Upon information and belief, Ms. Potts is a resident of Bulloch County, Georgia, and may be served with process at her place of employment at 205 South Veterans

- 4 -

Boulevard, Glennville, Tattnall County, Georgia 30427.  Ms. Potts is/was a Plan fiduciary during the relevant time period.

5.

Jeanie K. Anderson is/was a member of the Board of Directors.  Upon information and belief, Ms. Anderson is a resident of Tattnall County, Georgia, and may be served with process at 400 J & J Farm Road, Glennville, Tattnall County, Georgia 30427.  Ms. Anderson is/was a Plan fiduciary during the relevant time period.

6.

Elsie R. Chisholm is/was a member of the Board of Directors.  Upon information and belief, Ms. Chisholm is a resident of Chatham, Georgia, and may be served with process at 404 East Bryan Street, Savannah, Chatham County, Georgia 31401. Ms. Chisholm is/was a Plan fiduciary during the relevant time period.

7.

M.L. Coffer is/was a member of the Board of Directors.  Upon information and belief, Mr. Coffer is a resident of Liberty County, Georgia, and may be served with process at 1172 Fleming Loop, Fleming, Liberty County, Georgia 31309.  Mr. Coffer is/was a Plan fiduciary during the relevant time period.

8.

B. Daniel Dubberly, Jr. is/was a member of the Board of Directors.  Upon information and belief, Mr. Dubberly is a resident of Tattnall County, Georgia, and may be served with process at 704 West Barnard Street, Glennville, Tattnall County, Georgia 30427.  Mr. Dubberly is/was a Plan fiduciary during the relevant time period.

9.

Michael J. Kistler is/was a member of the Board of Directors.  Upon information and belief, Mr. Kistler is a resident of Chatham County, Georgia, and may be served with process at 1128 Wilmington Island Road, Savannah, Chatham County, Georgia 31410.  Mr. Kistler is/was a Plan fiduciary during the relevant time period.

10.

Julian (Butch) C. Lane, Jr., is/was a member of the Board of Directors. Upon information and belief, Mr. Lane is a resident of Candler County, Georgia, and may be served with process at 107 Cedar Point, Metter, Candler County, Georgia 30439.  Mr. Lane is/was a Plan fiduciary during the relevant time period.

11.

Don C. Martin is/was a member of the Board of Directors.   Upon information and belief, Mr. Martin is a resident of Tattnall County, Georgia, and

may be served with process at 305 Clyde Lee Jordan Road, Reidsville, Tattnall County, Georgia 30453.  Mr. Martin is/was a Plan fiduciary during the relevant time period.

12.

William M. Miller is/was a member of the Board of Directors.   Upon information and belief, Mr. Miller is a resident of Calhoun County, Florida, and may be served with process at 19530 SW Barfield Road, Blountstown, Calhoun County, Florida 32424.  Mr. Miller is/was a Plan fiduciary during the relevant period.

13.

Richard G. Mopper is/was a member of the Board of Directors.   Upon information and belief, Mr. Mopper is a resident of Chatham County, Georgia, and may be served with process at 31 West Congress Street, Savannah, Chatham County, Georgia 31401.  Mr. Mopper is/was a Plan fiduciary during the relevant time period.

14.

Patrick T. O'Connor is/was a member of the Board of Directors.   Upon information and belief, Mr. O'Connor is a resident of Chatham County, Georgia, and may be served with process at 15 Cardinal Road, Savannah, Chatham County,

Georgia 31406.  Mr. O'Connor is/was a Plan fiduciary during the relevant time period.

15.

Mark V. Smith is/was a member of the Board of Directors.  Upon information and belief, Mr. Smith is a resident of Chatham County, Georgia, and may be served with process at 621 Stephenson Avenue, Savannah, Chatham County, Georgia 31405.  Mr. Smith is/was a Plan fiduciary during the relevant time period.

16.

Ron Stephens is/was a member of the Board of Directors.  Upon information and belief, Mr. Stephens is a resident of Chatham County, Georgia, and may be served with process at 103 Anford Drive, Garden City, Chatham County, Georgia 31408.  Mr. Stephens is/was a Plan fiduciary during the relevant time period.

17.

Jeffrey R. Tucker is/was a member of the Board of Directors.  Upon information and belief, Mr. Tucker is a resident of Chatham County, Georgia, and may be served with process at 2 Dalry Lane, Savannah, Chatham County, Georgia 31419.  Mr. Tucker is/was a Plan fiduciary during the relevant time period.

18.

When Investment Committee Members JOHN DOES 1-20 are identified, their identities and service addresses will be submitted forthwith.  Each Investment Committee Member was a Plan fiduciary during the relevant time period.

19.

The Plan Trustee THE TRUST COMPANY OF STERNE, AGEE & LEACH, INC. ("the Trustee") has its principal office in Birmingham, Alabama, and may be served with process through its Registered Agent, NATIONAL REGISTERED AGENTS, INC., 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.  The Trustee is/was a Plan fiduciary during the relevant time period.

## JURISDICTION AND VENUE

20.

This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132, 1133, 1144 and 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the breach took place here, and Defendants may be found in this District.

## FACTS

### The Plan

21.

The Plan qualifies as an employee pension benefit plan under ERISA as defined by 29 U.S.C. § 1002(2).  The Plan is an "eligible individual account plan" within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), as it maintains a separate account for each participant, to which contributions and investment performance are allocated.   The Plan is a 401(k) and an Employee Stock Ownership Plan intended to be qualified under Code Sections 401(a) and 401(k) and to be an employee stock option plan within the meaning of Code Section 4975(e)(7).   It is also a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such participant's accounts.  A true and correct copy of the Plan is attached hereto as Exhibit A.

22.

The Plan provides, in relevant part, that a participant "shall be eligible to receive payment of his vested Accounts under the ESOP as soon as

administratively practicable following the end of the Plan Year in which the Termination of Employment occurs." (Exhibit A attached hereto, at Section 10.1.) This section applies equally to a participant who has reached a "Retirement Date." (Section 11.1.) Article 13 provides the timing and form of distribution; in general, it provides that a retiring participant whose account value exceeds $1,000 is entitled to a "lump sum cash payment" "not later than sixty (60) days after the last day of the Plan Year in which falls the later of … the Participant reaching Normal Retirement Age, or … a Retirement Date," provided, however, that the distribution can be made "at a later date *specified by the Participant*" so long as the distribution begins by the "required beginning date," which at the latest is "April 1 of the calendar year following the calendar year Participant attains age 70 ½." (Art. 13, *passim*.) Further, Section 13.3 provides a participant with the option of rolling over her distribution under the Plan to an "Eligible Retirement Plan," and such rollover is to commence "*less than* thirty (30) days" after the Plan Administrator provides all necessary notices, so long as the participant chooses to take the rollover before the expiration of the thirty (30) day notice period. (Section 13.3, emphasis added.) Further, the Plan Administrator "shall not" adjust the participant's account "for earnings or losses incurred after the Valuation Date with respect to which the Account is valued for imminent payout purposes coinciding with or preceding the date of distribution of the Account." (Section 13.2.)

"Valuation Date" is defined by the Plan as "the last day of the Plan Year *or any other day which the Plan Administrator declares to be a Valuation Date."* (Section 1.54, emphasis added.)

23.

The Plan invested primarily in First Citizens Bankshares stock ("First Citizens Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Plan.

24.

The Plan's investment in Company Stock was managed by the Investment Committee and the Trustee, which are both overseen by the Board of Directors.

**Ms. Brannen's ESOP Distribution Claim**

25.

Ms. Brannen worked for First Citizens Bank for 35 years, and worked her way up to the Assistant Vice President level before retirement.  She retired on March 17, 2004.  While working for First Citizens, Ms. Brannen participated in the ESOP Plan, fully expecting it would provide her with retirement benefits.  She was told when she retired that she didn't have to take her ESOP distribution right then, that she could apply for it "when she was ready."

26.

In early-to-mid 2009, Ms. Brannen received quarterly ESOP account statements for the last quarter of 2008 and first quarter of 2009. Those statements indicated that the valuation of First Citizens Bank stock had fallen precipitously, with her account losing approximately half of its value in some six (6) months. At no prior point in time was Ms. Brannen informed of a potential decline in the value of First Citizens Bank's stock, nor was she advised she should request her retirement distribution, though she was in periodic contact with the Plan Administrator, Dana Potts. She had no other way to monitor the stock's value.

27.

Due to this alarming and sudden decline, on May 27, 2009, in accordance with what she was told were the Plan's requirements, Ms. Brannen requested a lump sum distribution of her ESOP account, on an official claim form, with the intent to roll the entire sum over to an IRA at First Citizens Bank. (Exhibit B, attached hereto.)

28.

The Plan, via its Plan Administrator, member of the Board of Directors, and Chief Financial Officer of the Plan Sponsor (Ms. Potts), acknowledged receipt of her request. (Exh. B, p. 2.) Ms. Brannen's lump sum distribution should have occurred within a few weeks of May 27, 2009, at most, and should have been

based on the annual valuation of the company stock as of the end of the 2008 plan year.  But that distribution never occurred.

29.

Ms. Brannen never received, and to this day has not received, a written adverse benefit determination explaining why her request was denied/not granted (or why her distribution was not timely made).  Instead, she received several verbal assurances from Ms. Potts that they were "working on it [processing her request]."

30.

The only written correspondence Ms. Brannen ever received regarding her request was a February 12, 2010 letter from Ms. Potts indicating they had "encountered complications in our efforts to process ESOP benefit distribution requests generally. … First Citizens Bank currently must obtain regulatory approval for transfer of cash funds to the ESOP … ."  (Exhibit C attached hereto, at p. 1, emphasis added.)  Later correspondence revealed that First Citizens Bank entered into a "Memorandum of Understanding" with the Georgia Department of Banking and Finance on August 19, 2009 – a full two and a half months after Ms. Brannen made her request, and five and a half years after Ms. Brannen left First Citizens' employ.  At no prior point was Ms. Brannen informed that her ESOP retirement benefit/distribution was in jeopardy.

31.

To date, Ms. Brannen has not received a distribution of her account that she should have been paid from her ESOP in the summer of 2009 or earlier. Furthermore, Ms. Brannen turned 70½ on or about September 17, 2010; still no distribution has occurred to date, some four (4) years later and as a result Defendants are liable for penalties on the amounts not distributed.   Rather, Defendants have been assuring Ms. Brannen all along that her distribution is in progress.

32.

Defendants have offered no justification for the failure/refusal to abide by the ERISA Plan's terms.

33.

While not required to do so, in a last-ditch effort to receive a response/distribution from Defendants, Plaintiff sent a letter dated February 9, 2015 (the "Claim Letter").   The Claim letter constituted Plaintiff's attempt to exhaust her administrative remedies. As of the filing of this Complaint, Defendants have only informally, but not formally, responded to the Claim Letter.

34.

Because of Defendants' violations of the Plan's claims procedures and 29 U.S.C. § 1133(2), no time bars for appeals were triggered, Plaintiff's claim is

deemed exhausted, and Plaintiff should be entitled to have this Court determine her claim.  Additionally, the Plan is barred from challenging Plaintiff's claim on any basis, due to its failure to issue a determination providing any rationale for its failure to provide Plaintiff with her required distribution.  .

## GOVERNING LEGAL PRINCIPLES

35.

ERISA § 502(a) provides the enforcement mechanisms for breaches of ERISA's requirements.  These include § 502(a)(1)(B), a claim for benefits, and §§ 502(a)(2) & (a)(3), a claim for breaches of fiduciary duties, § 502(c), a claim for document penalties, and § 502(g), a claim for attorney's fees.

36.

Under ERISA § 502(a)(1)(B), a participant can bring an action" to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." As the Supreme Court has explained, a participant has three distinct remedies available under § 502(a)(1)(B): "[1] to recover accrued benefits, [2] to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and [3] to enjoin the plan administrator from improperly refusing to pay benefits in the future." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985).

**Claims on Behalf of the Plan**

37.

Throughout the relevant time period, the Bank's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the relevant time Period, the Bank exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

38.

Throughout the relevant time period, the Bank's Board of Directors' responsibilities included, *inter alia*, the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility.

39.

The Trustee, by operation of the Trust Agreement, was entrusted with the maintenance, investment, and decision-making regarding the assets of the Plan, including but not limited to the Company Stock. Throughout the relevant time Period, the Trustee exercised discretionary authority with respect to management

and administration of the Plan and/or management and disposition of the Plan's assets.

40.

The Investment Committee, by appointment and by operation of the Plan, was entrusted with the investment decision-making and oversight regarding the assets of the Plan, including but not limited to the Company Stock.  Throughout the relevant time Period, the Investment Committee exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

41.

For the first three (3) quarters of 2008, the Bank's per-share valuation, as determined by an outside valuation firm, was reportedly $340/share.

42.

After the Fourth Quarter 2008, Participants were sent statements reflecting the Bank's per-share price as having dropped to $234/share – losing over 30% of its value.

43.

After the First Quarter of 2009, Participants were sent statements reflecting the Bank's per-share as having dropped to $167/share – again losing approximately

29% from the previous quarter, but down *more than half* from the valuation in effect just six (6) months prior.

44.

The Company Stock has continued to decline; as of the most recent valuation provided to Plaintiff, the stock is now worth just over $29/share – less than 10% what it was worth before the precipitous decline.

45.

Despite the precipitous decline, Defendants have retained the Company Stock investment in the Plan.  At all relevant times, Defendants knew or should have known that Company Stock was an imprudent investment for the Plan. Upon information and belief, the Plan's fiduciaries failed to conduct an appropriate investigation into whether Company Stock was a prudent investment for the Plan. An adequate investigation by the Investment Committee and Trustee would have revealed to a reasonable fiduciary that investment by the Plan in Company Stock under these circumstances was clearly imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect Participants against unnecessary loss, and would have made different investment decisions.

46.

Upon information and belief, in addition, the Bank, the Board of Director Defendants, the Investment Committee and the Trustee failed to adequately

monitor and review the performance of the other fiduciary Defendants to ensure that they were fulfilling their fiduciary duties under the Plan and ERISA.

47.

Defendants failed to take any action to protect Participants from losses as a result of the Plan's investment in Company Stock. In fact, Defendants continued to allow investment of the Plan's assets in Company Stock as the per share price continued to plummet.

48.

Defendants regularly communicated with the Plan's Participants, including Plaintiff, yet failed to disclose the imprudence of investment in Company Stock. Defendants allowed the Plan's Participants to follow their natural bias towards investment in the stock of their employer by not disclosing negative material information concerning investment in Company Stock. As such, the Plan's Participants could not appreciate the true risks presented by investments in Company Stock and therefore could not make informed decisions regarding investments in the Plan.

## **GOVERNING LEGAL PRINCIPLES**

49.

A participant may bring an action under ERISA § 502(a)(2), for a breach of fiduciary duty under ERISA § 409(a), which provides, in pertinent part, that "any

person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."[2]   Fiduciaries face potential personal liability.  *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1338-39 (11th Cir. 2006).

50.

ERISA § 404(a)(l)(A) and (B) provide, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  These fiduciary duties under ERISA § 404(a)(l)(A)

---

[2] *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 252-253 (2008) (§ 502(a)(2) claim cognizable for breaches that had an adverse impact on the value of the Plan assets in participant's individual account).

and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."[3] They entail, among other things:

(a)      The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the First Citizens Bankshares ESOP, which invested in First Citizens Bank's stock, to ensure that each investment is a suitable option for the Plan;

(b)      The duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants,[4] regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)      A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of participants.

Cases alleging violations of these duties, in whole or in part, are viewed on par with all other similar-type allegations, and fiduciaries are not entitled to any

---

[3] *Herman v. NationsBank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997) (internal citation omitted).

[4] *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000) (internal citation omitted).

"presumption" that they have acted prudently.   *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459, 2467 (2014).

51.

ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

52.

During the relevant time Period, all of the Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, the Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

53.

ERISA § 405(a), 29 U.S.C. § 1105(a), Liability for breach by co-fiduciary," provides, in pertinent part, that "... [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary,

knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

54.

Plaintiff therefore brings this action under the authority of ERISA §502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## COUNT I – AGAINST THE PLAN AND THE BANK
## DECLARATORY JUDGMENT: 29 U.S.C. § 1132(a)(1)(B)

55.

The allegations contained in Paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

56.

Title 29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Plan and Plaintiff's rights thereunder were

violated when Plaintiff's claim requesting her ESOP distribution was not properly and timely paid.

57.

Pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to a declaratory judgment that her claim for her ESOP distribution was properly payable in 2009 using the per share price in the Bank's 2008 valuation.

### COUNT II – AGAINST THE PLAN AND THE BANK
### CLAIM FOR BENEFITS: 29 U.S.C. § 1132(a)(1)(B)

58.

The allegations contained in Paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

59.

Plaintiff is entitled to distribution of her ESOP account in a lump sum rollover distribution in an amount equal to the product of her Company shares multiplied by the per share price using the Company's 2008 valuation.

60.

By refusing to pay Ms. Brannen her ESOP distribution, the Plan and the Bank have breached the terms and conditions of the Plan.

61.

The Plan and the Bank are liable to Plaintiff in the amount of her rightful ESOP distribution plus prejudgment interest thereon.

## COUNT III – AGAINST THE PLAN ADMINISTRATOR
## DOCUMENT PENALTIES: 29 U.S.C. § 1132(c)

62.

The allegations contained in Paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

63.

ERISA specifies that a Plan Administrator has thirty (30) days to comply with a participant's request for Plan documents. 29 U.S.C. §§ 1024(b)(4), 1132(c)(1)(B).  Failure to provide the requested documents entitles a participant to petition the Court for the $110.00 per day penalty under 29 U.S.C. § 1132(c)(3).

64.

Under federal law, a Plan Administrator has thirty (30) days to comply with a participant's request for Plan documents, including the Plan, the summary plan description, and any other documents under which the Plan is administered. 29 U.S.C. §§ 1024(b)(4), 1132(c)(1)(B).

65.

On or about April 28, 2014, Plaintiff, by and through her undersigned counsel, sent a request for Plan documents to the Plan Administrator.

66.

The Plan Administrator responded, producing certain Plan documents, on or about May 27, 2014, 2014.   Upon information and belief, the Plan documents produced on that date are not all of the documents "under which the Plan is administered" pursuant to 29 U.S.C. § 1024(b)(4).

67.

By failing to provide all requested Plan documents, the Plan Administrator has breached its duties mandated by federal law.

68.

Plaintiff is entitled, pursuant to the Court's discretion granted by 29 U.S.C. § 1132(c)(3), to have penalties levied against the Plan Administrator in the amount of $110.00 for each day the Plan documents were not produced, after May 27, 2014.

**COUNT IV – ON BEHALF OF THE PLAN, AGAINST THE BOARD OF DIRECTORS, THE INVESTMENT COMMITTEE, AND THE TRUSTEE**

**BREACH OF FIDUCIARY DUTIES: 29 U.S.C. § 1132(a)(2)**

69.

The allegations contained in Paragraphs 1 through 55 above are re-alleged and incorporated by reference as if fully set forth herein.

70.

Plaintiff requests that the Court allow her to proceed on behalf of the Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which states that "[a] civil action may be brought –" "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" ERISA § 409(a), 29 U.S.C. § 1109(a), sets forth that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

71.

The factual allegations detailed herein demonstrate breaches of the fiduciary duties of prudence and loyalty, and a separate breach of the duty to monitor appointed fiduciaries.

72.

As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a)

and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V – AGAINST THE BOARD OF DIRECTORS, THE INVESTMENT COMMITTEE, AND THE TRUSTEE

## OTHER EQUITABLE RELIEF: 29 U.S.C. § 1132(a)(3)

73.

The allegations contained in Paragraphs 1 through 55, and 70 through 73 above are re-alleged and incorporated by reference as if set forth fully herein.

74.

Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants are liable to provide other equitable relief as appropriate to the Plan caused by their breaches of fiduciary duties alleged herein.

## COUNT VI

## ATTORNEYS' FEES: 29 U.S.C. § 1132(g)

75.

The allegations contained in Paragraphs 1 through 55 above are re-alleged and incorporated by reference as if fully set forth herein.

76.

29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

77.

Defendants' violations of ERISA have caused Plaintiff to incur litigation costs and attorney's fees to remedy the breaches herein.

78.

This Court should award Plaintiff his reasonable attorneys' fees and the costs of bringing this action.

WHEREFORE, Plaintiff Carrie Brannen, on behalf of herself and on behalf of the Plan, prays that the Court:

(a)     Issue a declaratory judgment that Plaintiff is entitled to her ESOP distribution under the terms of the Plan, as detailed herein;

(b)     Award Plaintiff the amount of benefits to which she is due, as detailed herein;

(c)     Allow Plaintiff to proceed on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) and to recoup the Plan's losses and other appropriate equitable relief from the Plan's fiduciaries for the breaches detailed herein;

(d)     Award all applicable pre- and post-judgment interest;

(e)     Award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

(f)     Grant such other and further relief as this Court deems just and appropriate.

This 27th day of March, 2015.

/s/ Nancy B. Pridgen
Nancy B. Pridgen
Georgia Bar No. 587949

MONNOLLY PRIDGEN LLC
3340 Peachtree Road, Suite 1800
Atlanta, Georgia 30326
Phone:  404-551-5884
Fax:  678-812-3654
Email: nancy@mplaw-llc.com

/s/ Jeffrey W. DeLoach
Jeffrey W. DeLoach
Georgia Bar No. 081669
Adam B. Land
Georgia Bar No. 075641

FORTSON, BENTLEY AND GRIFFIN, P.A.
2500 Daniell's Bridge Rd.
Buillding 200, Suite 3A
Athens, Georgia 30606
Phone: 706-548-1151
Fax: 706-559-0161
Email: jwd@fbglaw.com
        abl@fbglaw.com

Attorneys for Plaintiff