IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| CARRIE BRANNEN, both individually and on behalf of the Plan (First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(k) provisions), | * * * * * * | |
| | * | 6:15-cv-30 |
| Plaintiff, | * * | |
| v. | * * | |
| FIRST CITIZENS BANKSHARES INC. EMPLOYEE STOCK OWNERSHIP PLAN WITH 401(k) PROVISIONS, et al., | * * * * | |
| Defendants. | * * | |

**O R D E R**

This case concerns an employee-stock-ownership plan governed by the Employee Retirement and Security Act ("ERISA") as codified at 29 U.S.C. § 1001, *et seq*. Defendants' motions to dismiss Counts IV and V of Plaintiff's Complaint are before the Court.[1] Upon due consideration and with the benefit of oral argument (Doc. 70), the Court **GRANTS** Defendants' motions (Docs. 39-41) **IN PART** and **DENIES** their motions **IN PART**.

---

[1] Most Defendants filed a single motion to dismiss on September 21, 2015. (Doc. 39.) The remaining Defendants each filed "joinder" motions seeking dismissal on the same grounds as the principle motion. (Docs. 40, 41.)

# I. BACKGROUND

For purposes of Defendants' motions to dismiss, the Court assumes the truth of the following allegations contained in Plaintiff's Complaint.

Plaintiff worked for Defendant S Bankshares, Inc. ("the Bank"), formerly known as First Citizens Bankshares Inc., for thirty-five years, eventually rising to vice-president before retiring in 2004. (Compl. ¶ 25.) During her employment, Plaintiff participated in the Bank's employee-stock-ownership plan ("the Plan"). (Id.) The Plan is a Defendant in this matter. (Id. ¶ 2.) The Plan, formally known as the First Citizens Bankshares Inc. Employee Stock Ownership Plan with 401(k) Provisions, is an employee-pension-benefit plan governed by ERISA and sponsored by the Bank. (Id. ¶ 21) More particularly, the Plan is a 401(k) and employee-stock-ownership plan ("ESOP"), and a defined contribution plan that provides individual accounts for each plan participant. (Id.) Like most ESOP plans, the Plan primarily invests in the shares of its sponsoring employer ("Company Stock"), in this case, the Bank. (Id. ¶ 23.)

Defendant Dana Potts administered the Plan and also served as a member of the Bank's Board of Directors ("the Board"). (Id. ¶ 4.) Plaintiff is suing Defendant Potts in her capacity as Plan Administrator and as a board member. (Id.) In addition to Defendant Potts, thirteen other members or former members of

2

the Board are Defendants.  (Id. ¶¶ 5-17.)  The Bank's Board of Directors was responsible for appointing a trustee to manage the Plan's investments.  (Id. ¶ 24.)  In addition to the trustee, an appointed Investment Committee shared responsibility for managing the Plan's investments.  (Id.)[2]  The Board oversees and monitors both the trustee and the investment committee.  (Id. ¶ 24.)  The Board selected Defendant Sterne, Agee & Leach, Inc. to serve as Plan trustee.  (Id. ¶ 19.)

When Plaintiff retired in 2004, she did not take her distribution from the Plan.  (Id.. ¶ 25.)  That decision would prove costly.  In early-to-mid 2009, Plaintiff received ESOP account statements for the last quarter of 2008 and the first quarter of 2009.  (Id. ¶ 26.)  Those statements indicated that the value of Company Stock had declined from $340 per share to $167 per share.  (Id. ¶¶ 26, 42-42.)  The drop in the value of Company Stock resulted in Plaintiff's ESOP account losing approximately half its value during the preceding six months.  (Id. ¶ 26.)  On May 27, 2009, Plaintiff requested a lump-sum distribution of her ESOP account.  (Id. ¶ 27.)  Although not relevant to the claims at issue in this motion, Plaintiff alleges that the Bank never made the distribution and offered no

---

[2] Plaintiff's Complaint indicates that twenty "John Doe" investment committee members are Defendants in this case.  (Compl. ¶ 18.)  In their brief and at the hearing, Defendants represented that an investment committee was never created.  The existence of an investment committee has no effect on the present motion.

justification for failing to comply with the Plan's terms. (Id. ¶¶ 28-34.)  According to the most recent valuation available before filing suit, Company Stock was worth just over $29 per share.  (Id. ¶ 44.)

Despite the decline in value, Defendants have retained the Plan's investment in Company Stock.  (Id. ¶ 45.)  Plaintiff alleges that Defendants maintained the investment even though they knew or should have known the investment was imprudent. (Id.)  Further, she alleges that the Plan's fiduciaries failed to conduct an investigation into whether the investment remained prudent and that such an investigation would have revealed its imprudence under then-prevailing circumstances.  (Id.)

Plaintiff brings this case on her behalf and on behalf of the Plan.  In general, Plaintiff alleges that Defendants violated ERISA by, among other things, maintaining imprudent investments in Company Stock, failing to investigate whether investments in Company Stock were prudent under the circumstances, failing to disclose negative information concerning Company Stock as an investment, and failing to pay Plaintiff her ESOP distribution.  Her Complaint identifies six counts, which can be summarized as follows:

- Count I by Plaintiff individually against the Plan and the Bank for a declaratory judgment that Plaintiff's rights were violated when Plaintiff's claim requesting her ESOP distribution was not properly and timely paid;

- Count II by Plaintiff individually against the Plan and the Bank for the amount of her rightful ESOP distribution plus prejudgment interest;

- Count III by Plaintiff individually against Dana Potts as Plan Administrator for failing to provide requested Plan documents;

- Count IV by Plaintiff on behalf of the Plan for damages from the Board, the Investment Committee, and the Trustee for breach of their fiduciary duties of prudence, loyalty, and to monitor appointed fiduciaries;

- Count V by Plaintiff on behalf of the Plan for equitable relief from the Board, the Investment Committee, and the Trustee for breach of their fiduciary duties of prudence, loyalty, and to monitor appointed fiduciaries;

- Count VI for reasonable attorneys' fees and costs.

(Compl. ¶¶ 55-77.)

Though Plaintiff asserts six claims against Defendants, only Counts IV and V are presently at issue. Count IV pleads "breaches of the fiduciary duties of prudence and loyalty, and a separate breach of the duty to monitor appointed fiduciaries." (Compl. ¶ 71.) Count V seeks equitable relief for these same breaches. (Compl. ¶ 74.) On September 21, 2016, Defendants filed their motions to dismiss Counts IV and V. (Docs. 39-41.) Those motions are now ripe for adjudication.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant

fair notice of both the claim and the supporting grounds. <u>Bell</u> <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To survive a defendant's Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 556 U.S. at 555).

At the same time, a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see also</u> <u>Kabir v. Statebridge Co.</u>, No. 1:11-cv-2747, 2011 WL 4500050, at *2 (N.D. Ga. Sept. 27, 2011) (citing <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)). At this stage, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the

plaintiff. <u>Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1225 (11th Cir. 2002).

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" <u>Perez v. Fedex Ground Package Sys., Inc.</u>, 587 Fed. Appx. 603, 605 (11th Cir. 2014) (quoting <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004)).

### III. DISCUSSION

Counts IV and V of Plaintiff's Complaint allege that the Board of Directors, the Investment Committee, and the Trustee violated separate fiduciary duties of prudence and loyalty and that the Board also violated their fiduciary duty to monitor appointed fiduciaries. Count IV seeks damages while Count V seeks equitable relief for these alleged breaches. (<u>Id.</u> ¶¶ 72, 74.) The Court separately addresses each claimed breach below.

#### A. Duty of Prudence

Defendants argue that the statute of limitations bars Plaintiff's duty-of-prudence claim and that Plaintiff failed to satisfy the <u>Twombly-Iqbal</u> pleading standard.

At the hearing, the Court suggested that Plaintiff's duty-of-prudence claim could be viewed as two different claims or two

different alleged breaches of the duty of prudence.[3]   The first alleged breach challenged Defendants' decision to buy and hold Company Stock during 2008-09.   (See Compl. ¶ 45.)   Defendants' brief refers to such a claim as a stock-drop claim because these claims often arise where a plaintiff alleges that a fiduciary knew or should have known that particular stock was overvalued or excessively risky for a plan's objectives.   The second claim is that Defendants breached the duty of prudence by failing to investigate whether it was prudent to continue holding Company Stock.   (See id.)

Both parties rejected the Court's interpretation of Plaintiff's Complaint and argued that Plaintiff only brings one prudence claim.   But the parties' briefing and arguments revealed that Defendants believe that claim is a stock-drop claim while Plaintiff believes it is a failure-to-investigate claim.   This difference in perspective drives the parties' arguments on this motion.   The Court, however, continues to believe that Plaintiff's Complaint alleges two independent breaches of the duty of prudence and addresses each alleged breach separately below.

---

[3] Pleading in this fashion is similar to a plaintiff pleading one negligence count but alleging two breaches of the duty of care.

## 1. Decision to Hold First Citizens Bank Stock

The Court begins with Plaintiff's allegation that Defendants breached the duty of prudence by continuing to hold Company Stock. Defendants argue that ERISA's statute of limitations bars this claim.

The relevant statute of limitations provides as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> Except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Defendants argue that § 1113(2) bars Count IV because Plaintiff possessed "actual knowledge" of Defendants' alleged breach since "early-to-mid 2009." (Defs.' Br., Doc. 39 at 15.) "Actual knowledge," as used in § 1113(2), means that the Plaintiff "must have had specific knowledge of the actual breach of duty upon which he sues." <u>Brock v. Nellis</u>, 809 F.2d 753, 755 (11th Cir. 1987).

According to the Complaint, it was in early-to-mid 2009 when, upon receiving quarterly ESOP account statements for the last quarter of 2008 and the first quarter of 2009, Plaintiff learned of the 50% decline in Company Stock value. (Compl. ¶ 26.) In response to the sudden decrease, Plaintiff "requested a lump sum distribution of her ESOP account," which she intended to rollover to an IRA. (Id. ¶ 27.) Defendants contend that Plaintiff had actual knowledge of the facts giving rise to the alleged breach at this time. Conversely, Plaintiff believes Defendant, by continuing to hold the Company Stock, remained in violation of ERISA such that the statute of limitations never began to run.

In all relevant respects, this alleged breach is indistinguishable from In re Citigroup Erisa Litig., 104 F. Supp. 3d 599, 602 (S.D.N.Y. 2015), reconsideration denied sub nom. In re Citigroup ERISA Litig., 112 F. Supp. 3d 156 (S.D.N.Y. 2015), and aff'd sub nom. Muehlgay v. Citigroup Inc., No. 15-2461-cv, 2016 WL 2956958 (2d Cir. May 23, 2016). There, the plaintiffs alleged that the defendants breached their fiduciary duties by making imprudent investments in Citigroup. Id. at 609. The defendants moved to dismiss the plaintiffs' complaint on the grounds that it was barred by § 1113(2) because the plaintiffs' possessed "actual knowledge" of the imprudence of the investment three years before filing the suit. The district court noted that the plaintiffs' complaint alleged that

Citigroup's "perilous condition was abundantly clear . . . , based on, among other things, Citigroup stock's continuous decline in price per share [and] ratings agency downgrades, . . . ." Id. at 610. The district court concluded that the plaintiffs' possessed actual knowledge of the imprudence of continued investment in Citigroup by December 2008 and ruled that § 1113(2) barred the plaintiffs' claims. Id. at 610-11.

Here, the face of Plaintiff's Complaint indicates that the three-year limitations period began to run when Plaintiff learned of the precipitous drop in the value of Company Stock in early-to-mid 2009. (See Compl. ¶¶ 26-27.) Accordingly, the limitations period ran in early-to-mid 2012, well before Plaintiff filed her Complaint.

Plaintiff's counterargument is unconvincing. In her view, this case resembles Tibble v. Edison Int'l, 135 S. Ct. 1823, 1829 (2015). In Tibble, the plaintiff alleged, "that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id. The Supreme Court held that "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely" regardless of when the imprudent investment was selected. Id. Notably, however, Tibble's holding concerns 29 U.S.C. § 1113(1)(A), which provides for a six-year-limitations period "after (A) the date of the last action which constituted

11

a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113. <u>Tibble</u> was, therefore, concerned with the question of when a breach occurs for purposes of § 1113(1) and not when a participant possesses "actual knowledge" of a breach under § 1113(2). <u>See</u> <u>In re Citigroup ERISA Litig.</u>, 112 F. Supp. 3d 156, 159 (S.D.N.Y. 2015) (finding on reconsideration that "[n]othing in <u>Tibble</u> affects this Court's analysis of why the plaintiffs' claims are barred under the three-year statute of limitations in § 1113(2)").

For these reasons, the Court **DISMISSES** Plaintiff's duty-of-prudence claim to the extent that the alleged breach is Defendants' imprudent *decision* to hold Company Stock. Next, the Court considers whether Plaintiff states a viable claim for Defendants' breach of the duty of prudence by failing to investigate whether the Plan should continue to hold investments in Company Stock.

### 2. Failure to Investigate

Count IV of Plaintiff's Complaint alleges that Defendants breached the duty of prudence by failing to investigate the prudence of continuing to hold Company Stock. Defendants argue that this alleged breach should be dismissed because it is barred by the statute of limitations and fails to state a claim for relief.

12

As an initial matter, ERISA's statute-of-limitations does not bar a claim based on this alleged breach. Plaintiff never had "actual knowledge" of what actions Defendants took to investigate whether Company Stock continued to be a prudent investment, see 29 U.S.C. § 1113(2), and Plaintiff filed her suit within § 1113(1)'s six-year limitations window. Because the statute of limitations does not bar a claim based on this alleged breach of the duty of prudence, the Court turns to whether Plaintiff satisfied the Twombly-Iqbal pleading standard.

ERISA requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." Tibble, 135 S. Ct. at 1828. A trustee must "systematic[ally] conside[r] all the investments of the trust at regular intervals to ensure that they are appropriate." Id. (quoting A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 684 (2009)) (internal quotations omitted). "[A] trustee's duties apply not only in making investments but also in monitoring and reviewing investments, which is to be done in

a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." Id. (quoting Restatement (Third) of Trusts § 90, Comment b (2007)). Further, "[m]anaging embraces monitoring" and "a trustee has continuing responsibility for oversight of the suitability of the investments already made." Id. (quoting Unif. Prudent Inv'r Act § 2, Comment, 7B U.L.A. 21 (1995)) (internal quotation marks omitted); see also Unif. Prudent Inv'r Act § 2, Comment, 7B U.L.A. 21 (noting that § 2(d) "carries forward the traditional responsibility of the fiduciary investor to examine information likely to bear importantly on the value of the security of an investment").

Accordingly, at least in some circumstances, a fiduciary's failure to investigate the prudence of an investment may constitute a breach of the duty of prudence. See Armstrong v. LaSalle Bank Nat. Ass'n, 446 F.3d 728, 734 (7th Cir. 2006) ("[a] trustee who simply ignored changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent"). Moreover, the failure to monitor or investigate the continued prudence of an investment may breach the duty of prudence "even if adequate monitoring would have resulted in the same action (or inaction)." United Food & Commercial Workers Int'l Union-Indus. Pension Fund v. Bank of New York Mellon, No. 13-cv-4484, 2014 WL 4627904, at *4 (N.D. Ill. Sept. 16, 2014); see also Bd. of Trs. of the Operating Eng'rs Pension Trust v.

14

JPMorgan Chase Bank, N.A., 2013 U.S. Dist LEXIS 43746, at *27-28 (S.D.N.Y.2013) ("One 'hold' decision may have been based on careless imprudence, another may have been based on careful prudence. That the resulting loss is the same does not relieve the former of, nor condemn the latter to, liability."). The question is whether a prudent man would investigate whether the Plan should continue to invest in Company Stock under the circumstances prevailing in 2008 and 2009.

Plaintiff alleges that "the Plan's fiduciaries failed to conduct an appropriate investigation into whether Company Stock was a prudent investment for the Plan" and that such an investigation "would have revealed to a reasonable fiduciary that investment by the Plan in Company Stock under these circumstances was clearly imprudent." (Compl. ¶ 45.) Plaintiff further alleges that Defendants "failed to take any action" to protect Plan participants from investment losses. (Id. ¶ 47.) Plaintiff's Complaint is not particularly detailed, but she does allege that the Plan invested in Company Stock before 2008, that Defendants never conducted an investigation into whether the Plan should continue investing in Company Stock, and failed to take any action to protect the Plan from losses. (Id. ¶¶ 45, 47.) Although it is plausible that Defendants' failure to act resulted from a considered decision-making process following an investigation into the merits of investing in Company Stock, it is equally plausible that no investigation occurred and that the

15

Plan's buy-and-hold strategy resulted from the absence of the "care, skill, prudence and diligence" required of fiduciaries. See § 1104(a)(1)(B). The Court, therefore, finds that Plaintiff has stated a claim for breach of the fiduciary duty of prudence. See United Food, 2014 WL 4627904, at *4 ("the alleged fact that BNY Mellon adopted a 'hold' strategy and therefore did not monitor the Lehman Note is a sufficient factual allegation that stands on its own without further explanation (and, if untrue, is easy to refute at the appropriate stage)").

Briefly, the Court addresses the applicability of the Supreme Court's decision in Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459 (2014) to this claim. Defendants argue that Plaintiff fails to state a claim for relief because she did not "plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." Id. at 2472. This quotation, stripped of its context, suggests that the alternative-action requirement applies to every potential prudence claim. The Court concludes that it does not.

The Court's conclusion does not turn on Fifth Third's applicability to privately held companies, which the parties vigorously disputed. The Court assumes that Fifth Third's holding regarding inside information would apply in those

16

circumstances. Instead, the relevant distinction is between cases alleging imprudent investment *decisions* and those alleging a *failure to investigate* and reach a considered decision. Cf. Armstrong, 446 F.3d at 733-34 (declining to apply a deferential review standard where a trustee ignores changed circumstances and does not exercise a discretionary judgment). Fifth Third itself makes this clear. The opinion begins by describing the question before the Court as "whether, when an ESOP fiduciary's *decision* to buy or hold the employer's stock is challenged in court, the fiduciary is entitled to a defense-friendly standard that the lower courts have called a 'presumption of prudence.'" Fifth Third, 134 S. Ct. at 2463 (emphasis added). When describing the district court's order, the Supreme Court noted that the district court "began from the premise that where a lawsuit challenges ESOP fiduciaries' *investment decisions*, the plan fiduciaries start with a presumption that their decision to remain invested in employer securities was reasonable." Id. at 2464 (emphasis added) (internal quotations and citations omitted). Finally, when introducing the alternative-action requirement, the Supreme Court held that it applies "[t]o state a claim for breach of the duty of prudence on the basis of inside information," id. at 2472, meaning that it applies when a party alleges that a defendant should have reached a different investment decision based on inside information. The Court's review of cases relying on Fifth Third indicates that district

courts apply the alternative-action requirement to claims alleging that parties knew or should have known that a stock was improperly valued or risky based on inside information.[4] To the Court's knowledge, no court has applied <u>Fifth Third</u>'s alternative-action requirement to a claim alleging a fiduciary breached the duty of prudence by failing to investigate the prudence of remaining in an investment. Consistent with <u>Fifth Third</u>'s command to apply a "careful, context-sensitive scrutiny of a complaint's allegations," <u>id.</u> at 2570-71, the Court finds that, at the motion-to-dismiss stage, there is no alternative-action requirement in a case alleging that a Defendant breached the duty of prudence by failing to conduct an investigation into the prudence of continuing to hold an investment.

For these reasons, the Court **DENIES** Defendants' motions to dismiss Plaintiff's duty-of-prudence claim on the failure-to-investigate basis. Plaintiff may proceed with this claim based

---

[4] <u>See</u> <u>Hill v. Hill Bros. Constr. Co., Inc.</u>, No. 3:14-cv-213, 2016 WL 1252983, at *4 (N.D. Miss. Mar. 28, 2016) noting that the Supreme Court applied <u>Fifth Third</u>'s alternative-action requirement "to plaintiffs' allegations regarding [investment decisions based on] non-public information available only to the fiduciaries because they were Fifth Third insiders, . . . ."), <u>reconsideration denied,</u> No. 3:14-cv-213, 2016 WL 4132255 (N.D. Miss. Aug. 2, 2016); <u>In re Lehman Bros. Sec. & ERISA Litig.</u>, 113 F. Supp. 3d 745, 751 (S.D.N.Y. 2015) (applying <u>Fifth Third</u>'s alternative-action requirement to claims asserting that continued investment in company stock was imprudent based on inside information), <u>aff'd sub nom.</u> <u>Rinehart v. Lehman Bros. Holdings Inc.</u>, 817 F.3d 56 (2d Cir. 2016); <u>In re Jpmorgan Chase & Co. Erisa Litig.</u>, No. 12 CIV. 04027 (GBD), 2016 WL 110521, at *4 (S.D.N.Y. Jan. 8, 2016) (applying <u>Fifth Third</u>'s alternative-action requirement where "plaintiffs allege fraud and artificial inflation").

on her allegation that Defendants breached their duty of prudence by failing to investigate whether the Plan should continue to hold Company Stock.

### B. Duty to Monitor Appointed Fiduciaries

In this claim, Plaintiff alleges that the Board breached its fiduciary duty to monitor appointed fiduciaries. (Compl. ¶¶ 46, 70-71). The parties agree that the duty-to-monitor claim asserted in Count IV is derivative of the duty-of-prudence claim. (Defs.' Br., Doc. 39 at 17; Pl.'s Resp. Br., Doc. 52 at 19); see Fuller v. SunTrust Banks, Inc., 744 F.3d 685, 690 (11th Cir. 2014). In their briefs, Defendants argue that if the Court dismissed the duty-of-prudence claim, it should also dismiss the duty-to-monitor claim. Defendants made no independent argument that Plaintiff failed to state a claim for failure to monitor. Because the Court did not dismiss Plaintiff's duty-of-prudence claim on the failure-to-investigate basis, the Court **DENIES** Defendants' motion to dismiss Plaintiff's duty-to-monitor claim.

### C. Duty of Loyalty

Plaintiff also asserts a duty-of-loyalty claim against Defendants. (Compl. ¶¶ 48, 70-71.) Plaintiff alleges that "Defendants regularly communicated with the Plan's Participants, including Plaintiff, yet failed to disclose the imprudence of investment in Company Stock." (Compl. ¶ 48.) She further alleges that "Defendants allowed the Plan's participants to

follow their natural bias towards investment in the stock of their employer by *not disclosing negative material information* concerning investment in Company Stock." (Id. (emphasis added.)) According to Plaintiff, Defendants' nondisclosure prevented Plan Participants from making informed decisions regarding their investments in the Plan. (Id.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants moved to dismiss this claim, arguing that Plaintiff failed to meet the Twombly-Iqbal pleading standard

Courts have concluded that ERISA plan participants may state a cause of action for breach of fiduciary duty based on a failure to disclose information to plan participants. See Jones v. Am. Gen. Life & Acc. Ins. Co., 370 F.3d 1065, 1072 (11th Cir. 2004) (collecting cases); Hill v. BellSouth Corp., 313 F. Supp. 2d 1361, 1368 (N.D. Ga. 2004). Courts are, however, reluctant to require disclosure in cases based on inside information. Cf. In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 555 (S.D. Tex. 2003) (noting that "[t]he fiduciary's duty to disclose is an area of developing and controversial law"). For instance, in Lanfear v. Home Depot, Inc., 679 F.3d 1267 (11th Cir. 2012), the plaintiffs alleged that the defendants violated their duty of loyalty by "failing to disclose any information to the Plan participants regarding Home Depot's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option

under the plan." Id. Just as here, the defendants moved to dismiss for failure to state a claim. The district court granted the plaintiff's motion to dismiss, and the Eleventh Circuit affirmed. Id. at 1286.

In affirming the district court, the Eleventh Circuit held that plan fiduciaries are not under a duty to disclose material nonpublic information. Id. at 1285-86. To hold otherwise, the Court reasoned, "would force [fiduciaries] to guess whether, and if so to what extent, adverse nonpublic information will affect the price of employer stock, and then would require them to disclose that information to the plan participants if they believe that the information will have a materially adverse effect on the value of the investment fund." Id. at 1285. The Eleventh Circuit recognized multiple problems with such a rule. First, it would turn fiduciaries into investment advisors. Id. Second, the release of nonpublic information to plan participants would likely become immediately available on the market, "thus blowing any benefit to the participants." Id. And finally, the Court recognized that the selective disclosure of nonpublic information to Plan participants over non-plan market participants would give them an advantage in the stock market to which they are not entitled. Id.

Plaintiff attempts to distinguish Lanfear because she is not alleging failure to disclose "nonpublic" information. In a narrow sense, Plaintiff is correct: her Complaint does not

21

allege that any of this information is "nonpublic"; instead, she only alleges that Defendants failed to disclose "the imprudence of investing in Company Stock" and "negative material information" concerning Company Stock. At a hearing on this motion, Plaintiff further argued that Defendants should have disclosed the "riskiness" of the investing in Company Stock.

Plaintiff also points out that Lanfear does not foreclose all failure-to-disclose claims. In fact, summary judgment was recently denied in a case alleging that defendants "breached their fiduciary duties by providing false and incomplete information to the Plan members about the true value of [company] stock." Wagner v. Stiefel Labs., Inc., No. 1:12-cv-3234, 2015 WL 4557686, at *7 (N.D. Ga. June 18, 2015). At least in part, the Wagner decision relied on a disputed fact as to the existence of special circumstances requiring disclosure of material nonpublic information. See id. at *16; see also Hill v. BellSouth Corp., 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (noting that a "special circumstance" will be required to trigger heightened disclosure obligations). Thus, Wagner suggests that if a plaintiff can demonstrate the existence of "special circumstances" then, in contrast to Lanfear, a plaintiff can maintain a claim for failure to disclose material nonpublic information.

The Court, however, need not take a position on the precise contours of Defendants' disclosure obligation. Plaintiff's

Complaint is devoid of any specific factual allegations of what "negative material information" Defendants possessed but failed to disclose or what "special circumstances" required disclosure. By comparison, the plaintiffs in Wagner provided detailed allegations concerning the defendants' misconduct, including allegations that the defendants affirmatively misled plaintiffs regarding the value of the stock and management's plans for the company. Id. at *7. Additionally, these events allegedly occurred in connection with "special circumstances," namely the defendant company's ultimately successful merger, which can trigger a duty to disclose confidential information.[5] Id. at *16; see Hill, 313 F. Supp. 2d at 1369.

Plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Absent factual allegations of what Defendants failed to disclose and what special circumstances warranted disclosure, Plaintiff fails to state a cause of action based on failure to disclose negative material information regarding the prudence of investing in Company Stock.

---

[5] To be more precise, the Wagner decision appears to require disclosure of additional facts about the company's impending merger only because the defendants had actively misled plan participants concerning the potential for a significant change in the company such as taking the company public or merging. In other words, the Wagner result may have been different had defendants remained silent; it was their provision of misleading information which required corrective disclosure.

For these reasons, the Court **GRANTS** Defendants' motion to dismiss on Plaintiff's duty-of-loyalty claim.

### D. **Equitable Claims**

Defendants moved to dismiss Count V of Plaintiff's Complaint, which seeks equitable relief under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duties, for failure to state a claim.

In Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) "the Supreme Court held that Congress authorized claims by individuals for breach of fiduciary duties under [29 U.S.C. § 1132(a)(3)], ERISA's 'catchall' provision. This holding was premised upon the Court's finding that the plaintiffs had no other available remedy under ERISA." Rosario v. King & Prince Seafood Corp., No. 2:04-cv-036, 2006 WL 2367130, at *8 (S.D. Ga. Mar. 7, 2006). In Katz v. Comprehensive Plan Of Grp. Ins., 197 F.3d 1084, 1088 (11th Cir. 1999), the Eleventh Circuit affirmed the district court's conclusion that, under Varity, "a plaintiff with an adequate remedy for a claim for benefits under § 1132(a)(1)(B) cannot alternatively plead and proceed under § 1132(a)(3)." Katz, 197 F.3d at 1088 (emphasis added).

Plaintiff attempts to distinguish Katz on the grounds that it concerned alternative pleading between a claim for benefits under § 1132(a)(1)(B) and equitable relief under § 1132(a)(3) while here Plaintiff alternatively pleaded a fiduciary-duty

24

claim under § 1132(a)(2) and the § 1132(a)(3) claim for equitable relief. This is a distinction without a difference. The clear import of Varity and Katz is that § 1132(a)(3) only provides equitable relief where other remedial sections of ERISA are inadequate.

Plaintiff's Complaint does not specify what equitable relief she seeks in this case. Moreover, Plaintiff's response brief opposing Defendants' motion does not specify and, when questioned at the hearing, Plaintiff's counsel discussed equitable relief related to Plaintiff's distribution claim, not the fiduciary duty claims asserted in Count IV. What is clear from the Complaint is that Plaintiff seeks this unspecified equitable relief for the same alleged misconduct that underlies her § 1132(a)(2) claims for breach of fiduciary duties. If Plaintiff's allegations of misconduct are sufficient to state a claim under § 1132(a)(2), and the Court held above that they are, "then Plaintiffs are precluded from asserting these same allegations of misconduct through a breach of fiduciary duty claim under [§ 1132(a)(3)]." Rosario, 2006 WL 2367130, at *10. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Count V of Plaintiff's Complaint.

## IV. CONCLUSION

As stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss Counts IV and V of

Plaintiff's Complaint. (Docs. 39-41.) Because the Court heard argument on this motion on August 12, 2016 (Doc. 70), the Court **DIRECTS** the Clerk to **TERMINATE** Plaintiff's motion for a hearing. (Doc. 61.)

   **ORDER ENTERED** at Augusta, Georgia, this 26ᵗʰ day of August, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA